UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ex. rel., ) | |
| FERNANDO GOMEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 12-C-5111 |
| ) | |
| DONALD HULICK, Warden, ) | Judge John W. Darrah |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |
| ) | |

## **MEMORANDUM OPINION AND ORDER**

Pursuant to 28 U.S.C. § 2254, Petitioner Fernando Gomez filed a Petition for Writ of Habeas Corpus for his 2003 first degree murder conviction in the Circuit Court of Cook County, Illinois. For the reasons presented below, the Petition for Writ of Habeas Corpus is denied.

## **BACKGROUND**

### *Direct Appeal*

The following facts are taken from the Appellate Court of Illinois's orders denying Petitioner's direct and post-conviction appeals. On June 17, 2001, Petitioner, a Latin King, and fellow street gang members shot and killed a rival gang member, Juan Avalos. (Sept. 19, 2005 Appeal Order at 2.) Three days later, on June 20, 2001, Petitioner was arrested at a UPS facility where he worked and questioned by Chicago Police Department detectives regarding the murder. (*Id*. at 3.) Prior to questioning, Chicago Police Detective Michael Cummings advised Petitioner of his *Miranda* warnings, and Petitioner agreed to be interviewed. (*Id*.) Thereafter, on June 22, 2001, Petitioner was once again advised of his *Miranda* warnings and agreed to be interviewed, providing a videotaped statement regarding his involvement in the murder. (*Id*. at 4.) Petitioner

contends he invoked his right to counsel while in the custody of the Chicago Police Department when he asked to contact his family in order for them to get him an attorney. (Pet. at 5.) Additionally, Petitioner argues that while he was in custody, his family was denied access to him and thus unable to determine whether he needed counsel. (*Id*. at 8-9.)

Petitioner was found guilty of the first degree murder of Juan Avalos by a jury on October 17, 2003, and subsequently sentenced to 40 years' incarceration. (Sept. 19, 2005 Appeal Order at 19-20.) Petitioner filed a motion for a new trial, which was denied by the Circuit Court of Cook County. (*Id*. at 19-20.) Following his conviction, Petitioner appealed his conviction, asserting three grounds: (1) the trial court erred when it denied Petitioner's motion to suppress statements made during his interrogation after having invoked his right to counsel; (2) the holding[1] in *People v. McCauley,* 645 N.E.2d 923 (Ill. 1994), should be extended to a situation where a defendant's family presents itself at the police station; and (3) Petitioner did not have an initial probable cause determination hearing, or a *Gerstein* hearing, within 48 hours of his arrest, so his confession must be suppressed. (Sept. 19, 2005 Appeal Order at 1.)

As to Petitioner's first ground on appeal regarding his motion to suppress, the Illinois Appellate Court found that Illinois Supreme Court's ruling in *People v. Auilar* was applicable. 319 N.E.2d 514 (1974). In *Auilar*, the Illinois Supreme Court held that "even if there was an error in the admission of his statement, it was cured by his testimony." *Auilar*, 319 N.E.2d at 517. In Petitioner's case, Petitioner gave testimony at trial consistent with his videotaped confession; therefore, any issue regarding the admissibility of his confession is waived or any

---

[1] The holding in *McCauley* provides that "police officers may not deny an attorney access to his client and may not refuse to inform a suspect in custody that his attorney is seeking immediate access to him." *People v. Outlaw*, 904 N.E.2d 1208, 1218 (Ill. App. Ct. 2009) (citing *People v. McCauley*, 645 N.E.2d 923, 938-39 (Ill. 1994)).

2

error rendered harmless. (Sept. 19, 2005 Appeal Order at 24.) Even if Petitioner did not waive any issue regarding the admission of his confession by testifying at trial, the Illinois Appellate Court found Petitioner did not invoke his right to counsel when he requested to call his family during the interview. (*Id*.) Even if Petitioner had requested to call his family so that they could obtain counsel for him, this request was ambiguous, at best. (*Id*. at 25.) The appellate court determined Petitioner's ambiguous request to speak to his family was insufficient to indicate to police that he was exercising his right to an attorney or wanted an attorney present before any further questioning. (*Id*.)

The second ground raised by Petitioner on appeal was that the rule in *McCauley* should be extended to situations in which a suspect's family member goes to the police station and asks to speak with the suspect to determine whether counsel is necessary. This argument was rejected by the appellate court, which held, "there is no corresponding right to the presence of family members, nor any constitutional right of a family to have access to a suspect, as [Petitioner] seeks to impose." (Sept. 19, 2005 Appeal Order at 36.) The Illinois Appellate Court quoted the decision in *McCauley*, which provided that: "the law in Illinois remains that 'when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him.'" *McCauley*, 645 N.E.2d at 930 (quoting *People v. Smith*, 442 N.E.2d 1325 (Ill. 1982)).

Finally, the appellate court rejected Petitioner's third ground on direct appeal, holding that Petitioner was not entitled to the automatic suppression of his confession because he was not afforded a probable cause hearing within 48 hours. (Sept. 19, 2005 Appeal Order at 39.) The appellate court reasoned that the proper test to suppress statements made in violation of *Gerstein*

3

*v. Pugh*, 420 U.S. 103 (1975), is whether the statements were voluntary, that is, "whether the inherently coercive atmosphere of the police station was the impetus for the confession or whether it was the product of free will." (Sept. 19, 2005 Appeal Order at 39) (quoting *People v. Willis*, 831 N.E.2d 531, 535 (Ill. 2005)). Petitioner did not allege his confession was involuntary; as such, the Appellate Court of Illinois affirmed Petitioner's conviction for first degree murder on direct appeal. (Sept. 19, 2005 Appeal Order at 39.) The Illinois Supreme Court denied Petitioner's leave to appeal that decision on January 25, 2006. (Respondent's Answer Ex. F.)

*Post-Conviction Petition*

Following his direct appeal, on May 12, 2006, Petitioner filed a *pro se* post-conviction petition in the Circuit Court of Cook County, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, alleging ten separate claims of ineffective assistance of counsel during his trial and subsequent appeal. (June 30, 2011 Appeal Order at 2.) The trial court appointed an attorney to represent Petitioner during his post-conviction petition, and with the assistance of counsel, Petitioner filed a supplemental post-conviction petition. (*Id.*) The Circuit Court of Cook County dismissed the post-conviction petition without an evidentiary hearing, on the basis that Petitioner's "claims did not constitute a substantial showing of a constitutional deprivation." (*Id*. at 2.) Petitioner appealed the dismissal of his post-conviction petition to the Illinois Appellate Court, contending the lower court erred when it dismissed his ineffective assistance of counsel claims without a hearing. (*Id.*) Specifically, Petitioner argued he received ineffective assistance of counsel because his trial attorney failed to object to statements made during the prosecution's closing arguments and failed to present mitigating evidence during his sentencing hearing. (*Id*. at 5.)

4

The Illinois Appellate Court found the presentation of mitigating evidence in the form of testimony from Petitioner's family during his sentencing hearing would have been cumulative because counsel recited those mitigating factors during his argument. (*Id*. at 18.) As such, the court found Petitioner was not prejudiced by trial counsel's failure to present the testimony of his family members at sentencing. (*Id*. at 18.) The Illinois Appellate Court further held the alleged improper statements made by the prosecutor during closing argument, when viewed as a whole, did not prejudice Petitioner, given the overwhelming evidence presented at trial against him. (*Id*. at 21-22.) The appellate court also noted that the jury received an instruction regarding closing arguments at trial, minimizing any purported error that may have been committed by prosecutors, and that, therefore, appellate counsel did not err for failing to raise this issue. (*Id*. at 22.) Because Petitioner's claim did not establish a substantial showing that his constitutional right to effective assistance of counsel was violated, the Illinois Appellate Court affirmed the dismissal of Petitioner's ineffective assistance of counsel claims asserted in the post-conviction petition. (*Id*.)

Petitioner then filed a Petition for Leave to Appeal the post-conviction petition, raising to the Illinois Supreme Court only the claim that trial counsel was ineffective for failing to investigate mitigating evidence or present mitigating testimony at his sentencing hearing, which was denied on November 30, 2011. (Respondent's Answer Ex. O.)

## LEGAL STANDARD

Habeas corpus relief is available to a person in custody following entry of a state court judgment against him, only on grounds that his custody is in violation of the United States Constitution or the laws or treaties of the United States. 28 U.S.C. § 2254(a). Accordingly:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or, (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(1)-(2). A writ of habeas corpus may issue under the "contrary to" clause of 28 U.S.C. § 2254(d) by two means. First, the writ may issue if the state court applied a rule different from the governing law set forth by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Second, the writ may issue under the "contrary to" clause if the state court decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 406.

The court may issue a writ under the "unreasonable application" clause of § 2254(d) if the state court correctly identifies the governing legal principle of the United States Supreme Court but unreasonably applies the principle to the facts of the particular case. *Id.* at 407. The court may only issue a writ of habeas corpus if it determines that the state court's application of federal law was "objectively unreasonable." *Id.* at 365. This is a difficult bar for a petitioner to reach because "unreasonable" is considered "something lying well outside the boundaries of permissible differences of opinion." *McFowler v. Jaimet*, 349 F.3d 436, 447 (7th Cir. 2003) (citing *Williams*, 529 U.S. at 411).

When the petitioner is in custody as a result of a state court judgment, the state court's determinations on factual issues are presumed to be correct. 28 U.S.C. § 2254(e)(1). The federal court gives deference during its review to the last state court's decision. *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010). Thus, the petitioner bears "the burden of rebutting the

6

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A federal court reviewing a petition for writ of habeas corpus "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotations and citations omitted). Only when the court determines the state court's application of federal law was "objectively unreasonable" may the court issue a writ of habeas corpus. *Williams*, 562 U.S. at 409.

The statute also requires that the applicant for a writ of habeas corpus must have exhausted all remedies available to him in state court in order for the writ to be granted. 28 U.S.C. § 2254(b)(1). The applicant of a writ of habeas corpus must give the state court the first opportunity to review the applicant's claims and remedy any constitutional violations. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). The applicant for a writ of habeas corpus must give the state court "one full opportunity" in the state's appellate review process, including filing a petition to a court of discretionary review, to remedy any constitutional violations. *Id*. at 845; *see Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (finding that to avoid procedural default, the applicant for a writ of habeas corpus must present his claims at every level of the state court's appellate review system including petition to a court of discretionary review). A petitioner's claims are defaulted when he has exhausted state court remedies without presenting his claims at every level of the state court appellate process. *Lewis*, 390 F.3d at 1026.

When a petitioner has exhausted his state court remedies without presenting his federal claims at every level of the state court's appellate process, his claims are defaulted unless the petitioner demonstrates the reason for the default and prejudice or otherwise shows it is necessary for the federal court to overlook the default in order to prevent "a fundamental

7

miscarriage of justice." *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007). To satisfy the first exception, the petitioner must demonstrate that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once the petitioner demonstrates cause, he must show "actual prejudice" suffered from the alleged constitutional violations of which he complains. *McCleskey*, 499 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). The second exception to a habeas claim being procedurally defaulted requires the petitioner to demonstrate the constitutional violation of which he complains caused an innocent person to be convicted. *McCleskey*, 499 U.S. at 494 (characterizing such a violation as a fundamental miscarriage of justice).

## ANALYSIS

### *Ground I: Invocation of Right to Counsel*

In the first ground asserted, Petitioner alleges the state appellate court's determination that his right to counsel was not violated when he allegedly asked to contact his family so that they can retain counsel on his behalf was an unreasonable decision and contrary to federal law. (Pet. at 5.) *Pro se* petitioners' pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Although Petitioner does not expressly state due process and equal protection as the constitutional bases for his argument regarding the alleged violation of his right to counsel in his appellate state court proceedings, construed liberally, Petitioner invokes the Fifth Amendment as the constitutional bases for his petition. Thus, Petitioner's claims are not procedurally defaulted for failure to present the constitutional basis of his right to counsel claim in his direct appeal or in his petition filed here. However, Petitioner fails to make any argument or facts demonstrating disparate

treatment to support his equal protection claim. Even if Petitioner had made an argument regarding the basis of this claim, it would be procedurally defaulted under the presentment requirement of 28 U.S.C. § 2254(b)(1).

Essentially, Petitioner argues in the first claim that his Fifth Amendment right to counsel was violated when he allegedly requested to call his family for the purpose of obtaining counsel on his behalf. (Pet. at 5.) Petitioner asserted this claim at the state appellate level on direct appeal. The appellate court there found the trial court's decision to deny Petitioner's motion to suppress his statements was not manifestly erroneous because he *did not* invoke his right to counsel. (Sept. 19, 2005 Appeal Order at 29.) The Illinois Appellate Court's findings regarding Petitioner's claim were not contrary to established law or an unreasonable application of the law. The Illinois Appellate Court held:

> We will not disturb a trial court's decision denying a motion to suppress unless that decision is manifestly erroneous. *People v. Pitchford*, 314 Ill. App.3d 72, 76, 731 N.E.2d 323 (2000). It is the trial court's function to determine the credibility of witnesses and resolve conflicts in testimony. *People v. Matthews*, 306 Ill. App.3d 472, 482, 714 N.E.2d 98 (1999). "A defendant's request for an attorney is a *per se* invocation of his fifth amendment right and requires that all questioning by authorities cease." *People v. Torres*, 306 Ill. App.3d 301, 310, 714 N.E.2d 534 (1999). In other words, "[a]n accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for the assistance of counsel." *People v. Eichwedel*, 247 Ill. App.3d 393, 397, 617 N.E.2d 345 (1993). The court must, as a threshold matter, determine whether a defendant has, in fact, invoked his right to counsel. *Eichwedel*, 247 Ill. App.3d at 397. "Not every vague or ambiguous reference to an attorney will suffice as an invocation of the right to counsel." *Torres*, 306 Ill. App.3d at 310. "Rather an accused's demand must be sufficiently clear and definite as to reasonably inform the authorities of the accused's intention to invoke his right to an attorney." *Torres*, 306 Ill. App.3d at 310. After receiving evidence at the defendant's motion to suppress hearing and "observing the demeanor of the testifying witnesses, the trial court is entitled to believe the State's version of events rather than the defendant's version." *Torres*, 306 Ill. App.3d at 311.

(Sept. 19, 2005 Appeal Order at 21-22.)

The appellate court resolved Petitioner's claim through its application of the principle articulated in *People v. Auilar*, 319 N.E.2d 514 (Ill. 1974). (Sept. 19, 2005 Appeal Order at 22.) Specifically, the court in *Auilar* held:

> [I]t generally has been held that if a defendant takes the witness stand and admits in substance matters contained in a confession or statement he has given the police, this testimony will be considered to have waived or made harmless any error that may have occurred in the admission of the confession or statement.

(Sept. 19, 2005 Appeal Order at 22) (quoting *Auilar*, 319 N.E.2d at 516-17). Applying *Auilar* to Petitioner's claim, the appellate court held that when Petitioner "voluntarily testified at trial in substantial conformity with his videotaped confession, any error in admitting his videotaped confession or denying his motion to suppress was waived or rendered harmless." (Sept. 19, 2005 Appeal Order at 24.) The appellate court further found that, even if Petitioner had not waived any error regarding the admission of his statements, the court would have found that Petitioner's request to see his family so they could obtain counsel for him was ambiguous at best and not an invocation of counsel. (*Id*. at 24-25.) The court held Petitioner's request was insufficient to notify the police he was asserting his right to counsel or that he wanted an attorney present before any questioning by the police. (*Id*. at 25.)

The appellate court also looked at the totality of the circumstances and concluded Petitioner spoke to the police voluntarily. (*Id*. at 26.) At no time did Petitioner specifically ask for an attorney, nor did he refuse to answer questions without the presence of counsel. (*Id*.) The appellate court's findings did not contradict United States Supreme Court precedent. Furthermore, with no United States Supreme Court cases based on "materially indistinguishable

10

facts," the appellate court's finding that Petitioner did not invoke his right to counsel is not contrary to federal law. Accordingly, the petition is denied on this ground.

*Ground II: Extension of McCauley*

Petitioner asserts his second basis to support his habeas corpus petition is that his rights were violated when the police denied his family access to him while he was in custody. (Pet. at 8.) To support this contention, Petitioner cites to Illinois statutory provisions and Illinois case law. (*Id*. at 8-9.) Even after construing the petition under a less stringent standard, as Petitioner is proceeding *pro se*, Petitioner failed to state a constitutional basis for his claim. Petitioner's claim is based largely on the Illinois Supreme Court's decision in *People v. McCauley*, 645 N.E.2d 923 (Ill. 1994), and the Illinois Code of Criminal Procedure, 725 ILCS 5/103-3. (*Id*.) Petitioner argues that the second ground for his petition, the denial of his family to access him while he was in custody, is an error of the application of state law.

The appellate court declined to extend *McCauley* to the case at bar and found Petitioner's family was not entitled to have access to Petitioner while he was in custody. (*Id*. at 37.) The court in *McCauley* articulated:

> the law in Illinois remains that when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him.

(Sept. 19, 2005 Appeal Order at 31) (quoting *McCauley*, 645 N.E.2d at 930) (internal quotations and citation omitted). However, the appellate court noted the *McCauley* rule has not been extended to other situations, including those in which an attorney calls the police station where his client is in custody. (Sept. 19, 2005 Appeal Order at 34.) According to the appellate court,

11

Illinois case law establishes a defendant's state constitutional rights are violated when police deny the defendant's attorney physical access to the defendant during an interrogation and the police did not notify the defendant his attorney wanted to consult with him. (*Id*. at 34.) The appellate court also declined to extend *McCauley* to an Illinois statute permitting an arrestee to make a reasonable number of telephone calls to a family member or attorney of his choice because it was a statutory right, and not a constitutional right, afforded to the arrestee but not his family members. (*Id*. at 35-36.)

In Petitioner's Reply, he argues his claim regarding his family being denied access to Petitioner while he was in custody does implicate a constitutional right. To support his contention, Petitioner argues the Illinois case law relied upon, namely *People v. McCauley*, includes a lengthy discussion of federal due process as it applies to custodial statements. (Reply at 8.)

Under Section 2254(b), a petitioner is required to fairly present his federal claims to the state court, in order to give the state the opportunity to correct violations of federal rights. *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009). However, the fair presentment requirement is not satisfied if a pleading does not cite to any case law that would alert the court that a federal constitutional right is the basis of the claim. *Baldwin v. Reese*, 541 U.S. 27, 31 (2004). A claim is not fairly presented "if that [state] court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, which does so." *Id*. at 32. The Seventh Circuit considers four factors to determine whether a petitioner for a writ of habeas corpus has fairly presented his claims in the state court process: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases

which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Byers v. Basinger*, 610 F.3d 980, 985 (2010) (quoting *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009)).

Although Petitioner argues his claim states a federal constitutional basis given the due process discussion in *McCauley*, the state courts would have to look beyond Petitioner's brief to find a federal constitutional basis for his claims because it is not immediately apparent through the citation of the state court opinion alone. Moreover, *McCauley* is distinguishable from the present case because, unlike *McCauley*, Petitioner's family, and not an attorney, arrived at the police station, seeking to speak to Petitioner. Petitioner does not frame his claim in particular terms so as to call to mind a federal constitutional right; rather, Petitioner's claim relies heavily on Illinois case law, statutes, and the Illinois Constitution. Petitioner also failed to state a fact pattern that is within the mainstream of constitutional litigation of equal protection rights and due process rights. As discussed above, Petitioner's claim does not state specific facts implicating a federal due process violation.

As Petitioner's second claim is based on rights guaranteed by the Illinois Constitution and an Illinois statutory provision, habeas corpus review of this ground is barred for lack of a federal constitutional basis. The United States Supreme Court has not interpreted the Fifth Amendment as requiring police to allow a family member access to an arrestee in custody to determine if he may need counsel. Therefore, Petitioner's second ground for habeas corpus relief fails.

13

*Ground III: Petitioner's Confession*

In his third claim, Petitioner argues his Fourth Amendment rights were violated when he was detained for approximately 51 hours following his arrest without being brought before a judicial officer for a probable cause hearing. (Pet. at 12.) Petitioner relies on *Gerstein*, which held the Fourth Amendment requires that an arrestee be brought before a judicial officer for a probable cause determination. Petitioner argues further that his videotaped confession should have been suppressed because he did not receive a probable cause hearing within 48 hours. (Pet. at 14.) Petitioner presented his claim to the Illinois Appellate Court, which rejected the claim. The appellate court reasoned:

> The *Willis* court held that the proper test was the voluntariness test, not an attenuation test. Specifically the *Willis* court stated that '[w]hen faced with a *Gerstein/McLaughlin* violation, we ask simply whether the confession was voluntary – whether the inherently coercive atmosphere of the police station was the impetus for the confession or whether it was the product of free will. . . . If so, it is admissible. If not, it is inadmissible.' The length of delay, however, is nonetheless a factor in considering whether a confession is voluntary.

(Sept. 19, 2005 Appeal Order at 39) (quoting *People v. Willis*, 831 N.E.2d 531, 535-36 (Ill. 2005)). The appellate court found that, although the length of detention was a factor for consideration to determine whether a confession is voluntary, Petitioner's claim did not challenge the voluntariness of his confession. (Sept. 19, 2005 Appeal Order at 39.)

Furthermore, Petitioner raises the issue that his confession was involuntary for the first time in his Reply. (Reply at 9.) This claim is procedurally defaulted because the issue was not presented during the state court's appellate process. Petitioner failed to provide any reason for the procedural default and any prejudice that may result, nor does he argue his procedural default must be overlooked to prevent a miscarriage of justice. Petitioner's claim that his videotaped confession was involuntary is barred from habeas corpus review.

14

*Ground IV: Ineffective Assistance of Trial Counsel*

Petitioner alleges in his Writ of Habeas Corpus that his trial counsel's failure to investigate mitigation evidence or present mitigating witnesses during his sentencing hearing constituted ineffective assistance of counsel. (Pet. at 16.) Although Petitioner does not explicitly assert his rights to due process and equal protection as the constitutional bases of his post-conviction petition, construed liberally, Petitioner's claim asserts an alleged violation of his Sixth Amendment right to effective assistance of counsel. Petitioner presented this claim in his post-conviction petition for relief, which was dismissed by the trial court without an evidentiary hearing. On appeal, the Illinois Appellate Court rejected Petitioner's ineffective assistance of counsel claim. The appellate court explained:

> To establish a claim of ineffective assistance, a defendant must prove: (1) counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) the defendant suffered prejudice as a result of the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Ford*, 368 Ill. App.3d 562, 571 (2006). "Prejudice is shown when there is a "reasonable probability" that, but for counsel's ineffectiveness, the defendant's sentence or conviction would have been different." *Ford*, 368 Ill. App.3d at 571, citing *People v. Mack*, 167 Ill.2d 525, 532 (1995). A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694.
>
> In assessing an ineffective claim, the court must give deference to counsel's conduct within the context of the trial and without the benefit of hindsight. *People v. King*, 316 Ill. App.3d 901, 913 (2000); *People v. Tate*, 305 Ill. App.3d 607 (1999). "As such, 'a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of *sound* trial strategy and not incompetence.'" (Emphasis in original.) *King*, 316 Ill. App.3d at 913, quoting *Coleman*, 183 Ill.2d 366, 397 (1998).

(June 30, 2011 Appeal Order at 10-11.) The appellate court explained that Petitioner's trial record reflected mitigating evidence was presented during the sentencing hearing. (*Id.* at 17.) Specifically, the appellate court found Petitioner's attorney:

15

> [A]rgued to the court in mitigation that defendant was from "a very good" and "hard working" family, that the court had already heard testimony from defendant's brother and sister on defendant's behalf during the pre-trial suppression hearing, and that defendant's family had been present throughout the trial proceedings and at the sentencing hearing itself. Counsel also highlighted to the court that defendant had been gainfully employed for a period of time prior to the incidence, that defendant had broken off all ties with the street gang after the shooting, that defendant had "matured" in the couple years since the shooting had occurred, and that defendant deserved the minimum sentence because he was not the actual shooter and had cooperated with the police during their investigation of the crime.

(*Id.* at 17-18.)

The court reviewed the record and found the mitigation evidence, namely, his family's testimony, was cumulative of the evidence presented by the attorney during the sentencing hearing to the court. (*Id.* at 18.) As such, the appellate court found the additional mitigation evidence would not have affected the outcome of the sentencing hearing given that the weight of the mitigating factors was diminished by the weight of the aggravating factors of the offense. (*Id.* at 19.) Because Petitioner did not establish he was prejudiced by his trial counsel's purported failure to present mitigating testimony, Petitioner's claim failed to "establish a substantial showing of a constitutional violation." (*Id.* at 20.)

The appellate court's decision regarding Petitioner's ineffective assistance of counsel claim was not contrary to federal law. The appellate court correctly articulated the standard to evaluate ineffective assistance of counsel claims, namely, the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a petitioner must show that his legal representation "falls 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms,' and the defendant suffers prejudice as a result." *Chaidez v. United States*, 133 S.Ct. 1103, 1107 (2013) (quoting

*Strickland*, 466 U.S. at 687-688). Petitioner failed to meet the *Strickland* standard, and thus, this third ground upon which he asserts habeas corpus relief is rejected.

*Ground V: Ineffective Assistance of Appellate Counsel*

The fifth claim set forth in the habeas corpus petition fails because it is procedurally defaulted. Specifically, Ground V of the petition is procedurally defaulted because Petitioner failed to present this issue at every level in the state court system. Here, Petitioner alleges ineffective assistance of his appellate counsel for failing to raise his trial counsel's ineffectiveness because he did not object to statements made during the prosecution's closing arguments. (Pet. at 20.) While Petitioner presented his ineffective assistance of counsel claims in his post-conviction petition for relief, this claim was not presented to the Illinois Supreme Court for review in accordance with the exhaustion requirement of 28 U.S.C § 2254(b)(1). Therefore, Petitioner's ineffective assistance of counsel claim presented is procedurally defaulted. Petitioner's procedural default cannot be overlooked because he does not explain the reason for his procedural default or any prejudice that might result, nor does he present an argument that his claim must be reviewed to prevent a miscarriage of justice.

Even if the claim of ineffective assistance of appellate counsel was not procedurally defaulted, it is barred from habeas corpus review because the appellate court's finding is not contrary to federal law. The appellate court rejected Petitioner's claim, reasoning:

> A court also uses the *Strickland* analysis to determine the adequacy of appellate counsel. *People v. Easley*, 192 Ill.2d 307, 328-29 (2000). Moreover, we note "[a]ppellate counsel is not obliged to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong." *Easley*, 192 Ill.2d at 329. Therefore, unless the underlying issue is meritorious, a defendant has suffered no prejudice from appellate counsel's alleged failure to raise it on appeal. *Easley*, 192 Ill.2d at 329, citing *People v. Childress*, 191 Ill.2d 168, 175 (2000).

> Prosecutors are afforded wide latitude in closing arguments. *People v. Brooks*, 345 Ill.App.3d 945, 951 (2004); *People v. Walker*, 262 Ill.App.3d 796, 804 (1994). Improper comments or remarks are not reversible error unless they are either a material factor in the conviction or cause substantial prejudice to the defendant. *Brooks*, 345 Ill.App.3d at 951. A trial court can correct any error resulting from an improper remark by sustaining an objection or instructing the jury. *Brooks*, 345 Ill.App.3d at 951.

(June 30, 2011 Appeal Order at 20-21.)

After applying the *Strickland* test to assess the validity of Petitioner's claim, the appellate court rejected the Petitioner's claim. (*Id.* at 22.) During the prosecution's closing arguments at trial, the prosecutor referred to Petitioner as a "coward" and the "cowardly lion king" on several occasions. (*Id.*) The prosecutor also urged the jury "to stand up to the Latin Kings, to tell them there's nothing noble about what they do." (*Id.*) The appellate court assessed the closing arguments as a whole, as well as the evidence presented against Petitioner, and found the prosecutor's statements, even if improper, were not sufficient to cause "substantial prejudice" to Petitioner or "constitute a material factor in the conviction." (*Id.*) The appellate court also noted that any alleged error that resulted from the prosecutor's statements was minimized with jury instructions regarding the role of the parties' closing arguments. (*Id.*) Had this issue been raised on direct appeal, the prosecutor's conduct would not have amounted to reversible error. (*Id.*) The appellate court concluded that because Petitioner failed to demonstrate the alleged prosecutorial misconduct claim would have been meritorious if it was raised on direct appeal, Petitioner's constitutional right to effective assistance of counsel was not violated. (*Id.*) The appellate court did not err in its application of the *Strickland* standard to Petitioner's claim of ineffective assistance of appellate counsel; accordingly, this ground asserted for habeas corpus relief also fails.

*Certificate of Appealability*

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the aforementioned reasons, Petitioner has failed to substantially demonstrate that he has been denied a constitutional right. To demonstrate the denial of a constitutional right, a petitioner must demonstrate that "reasonable jurists could debate (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4 (1983)). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Slack*, 529 U.S. at 484. Accordingly, because Petitioner has failed to make a substantial showing of the denial of a constitutional right in his petition, a certificate of appealability will not issue.

## CONCLUSION

For the reasons set forth above, Fernando Gomez's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied. A certificate of appealability will not issue.

Date:     10/30/13

JOHN W. DARRAH
United States District Court Judge